**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000348
03-JUL-2025
08:01 AM
Dkt. 49 SO**

NO. CAAP-22-0000348

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

HAWAII NATIONAL BANK, Plaintiff-Appellee,
v.
SUTAH CHIRAYUNON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC131000998)

### SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, McCullen and Guidry, JJ.)

Defendant-Appellant Sutah Chirayunon (**Chirayunon**) appeals from the Circuit Court of the First Circuit's (**circuit court**)[1] "Findings of Fact and Conclusions of Law" (**FOF/COL**), filed April 20, 2022, and Final Judgment, filed July 21, 2022.

This appeal arises out of a dispute regarding Chirayunon's claim to real property (**Unit 9**) located at Kahala

---

[1] The Honorable Jeffrey P. Crabtree presided.

Garden Apartments, Inc. (**KGAI**).[2]  In August 1952, KGAI entered into a master lease with fee owner/lessor Trustees of the Estate of Bernice Pauahi Bishop (**Bishop Estate**).  KGAI, as a residential cooperative (**co-op**), issued shares of stock and "proprietary leases" for individual residential units. Shareholders did not own title to their units, had no leasehold interest from Bishop Estate, and held no interest in the real property.  The unit leases were due to expire upon termination of the master lease on July 31, 2007.

Marjorie Parker (**Parker**) held a KGAI proprietary lease for Unit 9 that was to run until July 31, 2007.  In 1999, Chirayunon became a residential tenant of Unit 9.  In October 2003, Parker sold her interest in the KGAI co-op to Chirayunon via an "Agreement of Sale" for $95,500.  The interest conveyed through the Agreement of Sale was one share of common stock in the KGAI co-op, and Parker's interest under the proprietary lease to Unit 9.

Parker did not, at that time, seek or obtain consent from KGAI to transfer her interest to Chirayunon, as was required by KGAI's Articles of Association:

> (f) **No owner or holder of any share or shares of stock of the corporation which have been so allocated to an apartment shall sell, assign, transfer**, mortgage, pledge, hypothecate, or otherwise dispose of or encumber **such stock without the prior written consent of the corporation given by majority vote of the Board of Directors**, and **any**

---

[2]     The following background facts are largely taken from the circuit court's unchallenged findings of fact (**FOFs**).

> **purported disposition or encumbrance of such stock in violation hereof shall be null and void and of no effect whatsoever.** Any transfer of stock consented to as aforesaid may be made in any manner permitted by law, these Articles of Association, and the By-Laws of the corporation, but no such transfer shall be valid except between the parties thereto until such transfer shall have been duly recorded in the stock books of the corporation and a new certificate shall have been issued in accordance therewith. No certificate of stock shall be delivered unless the person entitled to such certificate or some person duly authorized by such person shall receipt for the same and agree to be bound by all of the provisions of the Articles of Association and By-Laws of the corporation applicable to such shares. **The corporation shall have the first privilege of purchasing stock offered for sale by any stockholder.**

(Emphasis added.)

In June 2007, KGAI obtained a loan from Plaintiff-Appellee Hawaii National Bank (**HNB**) for $5,390,000 "[t]o finance the purchase of the leased fee land underlying the Kahala Garden Apartment Project." The loan was secured by a mortgage, and was intended as a temporary bridge loan to give the KGAI shareholders time to arrange financing to buy their units in fee simple. KGAI purchased the entire fee simple interest from Bishop Estate in July 2007. KGAI officially converted from a co-op to a condominium association in February 2008.

In July 2007, the proprietary lease for Unit 9 expired when the master lease from Bishop Estate expired. In August 2007, KGAI's board, in a letter to Parker and Chirayunon, unanimously refused to consent to the transfer of Parker's stock to Chirayunon, on the basis that KGAI was in the process of converting from a co-op to a condominium association.

In August 2008, Parker and Chirayunon executed a document for the assignment of stock, proprietary lease, and satisfaction of the 2003 Agreement of Sale. KGAI, as lessor, provided written consent, with the express reservation that consent would automatically be rescinded and revoked if Chirayunon did not close on the purchase of the leased fee interest in Unit 9 from KGAI within thirty days after the document was recorded.

Chirayunon did not close on the purchase of the fee simple interest in Unit 9. Chirayunon continued to possess, and remodeled, Unit 9. KGAI defaulted on its loan from HNB in 2011, and, in lieu of foreclosure, KGAI transferred to HNB its rights to Unit 9 via a Warranty Deed.

In April 2011, HNB sent a letter to Chirayunon stating that ownership of Unit 9 would be transferred to HNB shortly, and offering Chirayunon a six-month window during which Chirayunon could purchase Unit 9. In May 2011, Chirayunon signed, in the presence of his counsel, an agreement that was executed by KGAI in March 2011 for the cancellation of the proprietary lease for Unit 9 (**Cancellation Agreement**). Chirayunon also entered into a short-term residential lease with HNB that would expire on December 31, 2011. This lease and an option to buy Unit 9 were extended by HNB to August 31, 2012.

Chirayunon did not buy Unit 9 by August 31, 2012. HNB declined to extend the residential lease, and gave Chirayunon forty-five days to vacate Unit 9. Chirayunon did not vacate Unit 9, and HNB filed an eviction action.

HNB filed its circuit court complaint on April 3, 2013, asserting the following claims for relief: (1) a declaratory judgment that Chirayunon "has no right, title, or interest" in Unit 9; (2) a writ of possession; and (3) damages "in an amount to be proven at trial." Prior to this appeal, HNB filed three motions for partial summary judgment. The first two were granted by the circuit court, but this court, on appeal, determined that there were genuine issues of material fact precluding summary judgment.[3] The third was denied by the circuit court.

The matter proceeded to a jury-waived trial in July 2021. In April 2022, the circuit court entered its FOF/COL, and this appeal followed.

Chirayunon raises the following points of error on appeal, contending that the circuit court erred: (1) "by concluding that [Chirayunon] never held stock in [KGAI] and thus did not have rights as a [KGAI] shareholder to purchase Unit 9";

---

[3] Haw. Nat'l Bank v. Chirayunon, No. CAAP-14-0000994, 2015 WL 6080387 (Haw. App. Oct. 15, 2015) (mem. op.); Haw. Nat'l Bank v. Chirayunon, Nos. CAAP-16-0000649 & CAAP-16-0000676, 2020 WL 433368 (Haw. App. Jan. 28, 2020) (mem. op.).

(2) "because if [Chirayunon] never held, or held and transferred, the [KGAI] stock associated with Unit 9, then the party that retained the rights associated with said stock is an indispensable party to the instant matter [but] was not added as a party to the matter"; (3) "by concluding that the 'Cancellation Agreement' could have had any effect on [Chirayunon's] ownership interest where . . . [Chirayunon's] ownership interest had already vested pursuant to the terms of the earlier 'Warranty Deed'"; and (4) "by concluding that the 'Rental Agreements' were valid despite [HNB] presenting the agreements to [Chirayunon] under misrepresentations about his rights to [Unit 9], or under fraudulent inducement."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Chirayunon's points of error as follows:

(1) Chirayunon contends that the circuit court erred in determining that he held no shareholder interest in Unit 9. Chirayunon specifically challenges FOF 31(D)-(G), which states, in relevant part,

> 31.  This court finds no persuasive evidence that [Chirayunon] had a right to occupy Unit 9 after August 31, 2012 (the expiration of the last of multiple deadlines to buy the unit.)  The court's reasons include:
>
> . . . .
>
> D.    **[Chirayunon] did not have the established**

**rights of a [KGAI] shareholder because he did not obtain consent of [KGAI] to the 2003 [Agreement of Sale] so he never owned stock.** See **Exhibit J-1,** the governing document of [KGAI] which requires consent of [KGAI] and bars delivery of any stock to an alleged new shareholder unless after consent the transaction is registered in the corporate books and a new stock certificate is issued. Any purported transfer of a unit without [KGAI']s consent (based on majority vote) "shall be null and void and of no effect whatsoever." Id.

E.    Further, in 2007 [KGAI] expressly refused to consent unless [Chirayunon] bought the unit, which [he] never did, and when [KGAI] consented in 2008, it was with the express requirement that [Chirayunon] buy the unit within 30 days, which [Chirayunon] failed to do. This failure expressly voided the conditional Consent.

F.    After 8/15/07, when the Board officially notified [Chirayunon] regarding the invalid consent for the [Agreement of Sale], [Chirayunon] was clearly on notice he had a significant problem with any ownership of Unit 9.

G.    [Chirayunon], with the advice of counsel, expressly surrendered any rights he had as a [KGAI] shareholder when he signed the Cancellation Agreement in May 2011.

(Emphasis added.)

We review FOF 31 as a mixed question of law and fact under the clearly erroneous standard.

A mixed question of law and fact exists when the conclusion is dependent upon the facts and circumstances of the particular case.

A finding of fact or mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Keep the N. Shore Country v. Bd. of Land & Nat. Res., 150 Hawaiʻi 486, 503-04, 506 P.3d 150, 167-68 (2022) (cleaned up).

7

In FOF 31, the circuit court concluded that Chirayunon was not a KGAI shareholder, based on evidence introduced at trial, which included the testimony from KGAI board members, HNB officers, and Chirayunon.[4]  The circuit court, as finder of fact, was "free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence."  Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 352, 152 P.3d 504, 524 (2007) (citation omitted).  It is well-settled that,

> [i]n cases of conflicting evidence, the credibility of the witnesses and the weight to be given their testimony are within the province of the trial court and, generally, will not be disturbed on appeal.  It is not the function of appellate courts to second-guess the trier of fact where there is substantial evidence in the record to support its conclusion.

Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawaiʻi 286, 296-97, 141 P.3d 459, 469-70 (2006) (citations omitted).

In light of the testimony and exhibits presented at trial, we conclude that there is substantial evidence to support the circuit court's determination that Chirayunon was not a KGAI co-op shareholder, or that he otherwise had the rights of a shareholder as to Unit 9.  Among other things, the record reflects that the KGAI board did not consent to the sale of Parker's stock to Chirayunon until August 2008, when it

---

[4]  We note that the record does not include any transcript of the trial proceedings.  "The burden is upon [the] appellant in an appeal to show error by reference to matters in the record, and he or she has the responsibility of providing an adequate transcript."  Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) (cleaned up).

conditioned its agreement to the sale on Chirayunon's purchase of the fee interest in Unit 9 within thirty days. Chirayunon's failure to comply with this express condition rescinded KGAI's consent. Moreover, the record reflects that Chirayunon agreed, in the presence of his attorney in May 2011, to the cancellation of any interest he may have held in Unit 9.

Chirayunon's first point of error lacks merit.

(2) Chirayunon contends that the circuit court erred in entering the judgment in HNB's favor because it failed to join either the former Unit 9 owner Parker or KGAI, who Chirayunon contends would be indispensable parties, to this action. Although Chirayunon failed to make this argument below, "[a]bsence of indispensable parties can be raised at any time even by a reviewing court on its own motion." Haiku Plantations Ass'n v. Lono, 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (citation omitted). Where this issue is raised for the first time on appeal, "the appellate court must perform a *de novo* [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 19 analysis, there being no analysis from the trial court to review." Marvin v. Pflueger, 127 Hawaiʻi 490, 503, 280 P.3d 88, 101 (2012).

"Under our precedents, an analysis under HRCP Rule 19 follows two steps." Ching v. Case, 145 Hawaiʻi 148, 169, 449 P.3d 1146, 1167 (2019) (citation omitted).

> First, **courts must determine if the party is a "necessary" party under part (a) of the rule, and if so, whether joinder of the party is feasible.** If the court finds that a party is necessary and joinder is not feasible, it then proceeds to part (b) of the rule, under which it analyzes whether "in equity and good conscience" the case can continue in the party's absence.

Id. (emphasis added) (citations omitted). An absent party is "necessary" if one or more of the following factors apply:

> (1) **[I]n the person's absence complete relief cannot be accorded among those already parties**, or (2) **the person claims an interest relating to the subject of the action** and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

HRCP Rule 19(a) (emphasis added); see also Civ. Beat L. Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu, 144 Hawaiʻi 466, 485, 445 P.3d 47, 66 (2019) (emphasis added) (citation omitted).

We conclude that the HRCP Rule 19 factors are not satisfied. HNB can pursue complete relief from Chirayunon. Moreover, neither Parker nor KGAI has an interest to claim in this case. Parker and KGAI are not necessary parties pursuant to HRCP Rule 19(a), and Chirayunon's second point of error therefore lacks merit.

(3) Chirayunon next contends that the Cancellation Agreement had no effect on his ownership interest because Chirayunon's ownership interest "had already vested" under the Warranty Deed. Chirayunon argues that KGAI, which had already executed the Warranty Deed in March 2011, lacked the authority

to subsequently execute the Cancellation Agreement with Chirayunon in May 2011.

The Warranty Deed, by its plain language, conveyed KGAI's rights in Unit 9 to HNB. The Cancellation Agreement between KGAI and Chirayunon, states, in pertinent part,

> [T]he parties . . . do hereby mutually agree that **as of the Effective Date, the Lease is cancelled and terminated**[.] . . . **Lessee does hereby release, remise and quitclaim unto Lessor whatever estate or interest Lessee may have in and under the Lease** as of the Effective Date so that **from and after said Effective Date, Lessee shall have no further right, title or interest in and to the leasehold estate described in the Lease.**

(Emphasis added.)

Chirayunon contends that the circuit court erred in its FOF 31(L), which reads,

> [Chirayunon] makes much of the fact that [HNB's] deed in lieu of foreclosure should have been executed after the Cancellation Agreement. The documents were clearly supposed to be signed in conjunction with each other, but were not executed at the same time. [HNB's] own letter states the Cancellation Agreement would come first. **The court concludes the documents being signed out of order changes nothing under the history and circumstances of this case.** First, **[Chirayunon] was not a shareholder, having failed to obtain consent to the initial [Agreement of Sale] in 2003.** Second, **in August 2007, [Chirayunon] was expressly denied consent for the [Agreement of Sale] by the Board.** Third, **in August 2008, the Board granted [Chirayunon] consent for a lease, but in the same paragraph stated the consent would be automatically rescinded and revoked if [Chirayunon] did not buy his unit within 30 days of recordation of the consent.** So at least three times [Chirayunon] failed to get the required consent. **Tr. 7/19, Ichikawa, p. 123:9 to 128:24.** And fourth, **regardless of the order the documents were signed in, the clear intent of the Cancellation Agreement was in fact to cancel any *lease* while [Chirayunon] was still being given another opportunity to *buy* the Unit.** Apparently [Chirayunon's] argument is that he had a perpetual, non-waivable right to buy a fee interest at any time until the bank loan expired, and the bank could not foreclose on his interest even if the loan was in default. The court concludes there is no support in the evidence for that theory.

11

(Emphasis added.)

We review FOF 31(L) as a mixed question of law and fact under the clearly erroneous standard. Keep the N. Shore Country, 150 Hawaiʻi at 503, 506 P.3d at 167.

The circuit court did not clearly err in finding that the Cancellation Agreement demonstrated Chirayunon's intent to "cancel any lease." (Emphasis omitted.) Moreover, there is substantial evidence in the record to support the circuit court's finding that Chirayunon did not have any shareholder or other interests to cancel. Because Chirayunon did not satisfy the KGAI board's conditions, the KGAI board's conditional approval in 2008 was rescinded. The circuit court did not err in finding that the board never approved the transfer of Parker's stock to Chirayunon.

Chirayunon's third point of error lacks merit.

(4) Chirayunon contends that the circuit court erred in concluding that his rental agreements with HNB were valid because he was fraudulently induced to enter into those agreements.

> To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his or her damage.

Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawaiʻi 149, 162-63, 73 P.3d 687, 700-01 (2003) (cleaned up). The party asserting fraud "must prove that their reliance . . . was reasonable." Id. at 163, 73 P.3d at 701. "[T]he question of whether one has acted reasonably under the circumstances is for the trier of fact to determine." Id. (citations omitted).

Here, Chirayunon appears to argue that he was fraudulently induced to "accept terms as a renter with [HNB] as landlord" based on HNB's misrepresentation that this was necessary "for [Chirayunon] to remain occupying [Unit 9]." Chirayunon contends that HNB misrepresented his rights, as a KGAI "shareholder," which "guaranteed [him] a right to a proprietary lease to reside in Unit 9."

The circuit court addressed and rejected Chirayunon's claims of misrepresentation in the following conclusions of law (**COLs**):

> 13. A claim of duress by a party represented by counsel during the events at issue is implausible[.] . . . **The court concludes that given counsel's participation and even physical presence when the cancellation Agreement was signed, the claim that this agreement was signed under duress is not credible.**
>
> 14. . . . **"[D]uress" during the execution of the Rental Agreement and Cancellation Agreement was not a material issue. Even if these documents (Exhibits J-14 and J-15) were nullified or otherwise disregarded as having been procured under duress, it does not affirmatively create for [Chirayunon] a fee simple interest in Unit 9.** At best, [Chirayunon] had a contingent right in a single share of a dissolved Co-Op and an expired proprietary lease.

13

15. **[Chirayunon's] title claims to Unit 9 as former shareholder of the Co-Op also are not valid because the Co-Op never consented to [Chirayunon's] acquisition of the stock from Parker, as required by the Co-Op's Articles of Association, and never actually succeeded to the rights of a shareholder in the Co-Op.**

16. Even if [Chirayunon] was a shareholder, [Chirayunon's] execution of the Cancellation Agreement effectively quitclaimed any of [Chirayunon's] potential shareholder interests in Unit 9.

17. Mr. Yoshikami's alleged inducement of [Chirayunon] to enter into the Cancellation Agreement and Rental Agreement does not constitute duress since [Chirayunon] had other options. Instead of signing the Cancellation Agreement and Rental Agreement, [Chirayunon] had years to obtain financing to buy the fee simple interest to Unit 9. He could promptly assert his alleged rights in any eviction proceeding.

(Emphasis added.)

The above COLs are unchallenged by Chirayunon, and, moreover, are supported by the circuit court's FOFs and the record evidence. See Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 125, 839 P.2d 10, 31 (1992) (recognizing that an unchallenged COL may be treated as binding on the appellate court); see also Allstate Ins. Co. v. Ponce, 105 Hawai‘i 445, 453, 99 P.3d 96, 104 (2004) (COLs are "freely reviewable" on appeal, and a COL "that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned." (cleaned up)).

For the foregoing reasons, we affirm the circuit court's FOF/COL and Final Judgment.

DATED: Honolulu, Hawaiʻi, July 3, 2025.

On the briefs:

Matthew K. Yoshida,
for Defendant-Appellant.

Leroy E. Colombe,
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge